|  |  |
|---|---|
| 1 | |
| 2 | |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| EVERTON WHITELY, | No. 2:16-cv-1534-KJM-EFB P |
|---|---|
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| CDCR, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. The matter is currently before the court on defendants' motion for summary judgment. ECF No. 38. Plaintiff has filed an opposition (ECF No. 47) and defendants have filed a reply (ECF No. 51). For the reasons stated below, the motion should be granted.

### Background

Plaintiff alleges that, on March 11, 2015 and while incarcerated at CSP-Sacramento, he was denied access to a unit chapel where Islamic Taleem services were being held. ECF No. 1 at 3. He purportedly approached the chapel entrance and was met by defendant Calderon, who instructed plaintiff to wait by some nearby bleachers until "yard outline" was completed and it was time for him to be processed into the chapel. *Id.* Plaintiff allegedly complied and waited until the "outline" process was completed before attempting to gain entry to the chapel again. *Id.*
/////

1

Calderon then allegedly denied him access a second time, informing him that he was now too late to enter the service. *Id.* Plaintiff alleges that this rationale for denying him entry was pretext insofar as he saw a different correctional officer – defendant Baker – allowing other inmates into the chapel after this exchange. *Id.* Having witnessed the foregoing, plaintiff approached Baker and inquired why Calderon had told him he was too late. *Id.* at 3-4.

While plaintiff and Baker were speaking, Calderon approached and interjected, again stating that plaintiff was too late to go to service. *Id.* at 4. Calderon told plaintiff he had two minutes to leave the area or he would be escorted back to his cell. *Id.* Plaintiff refused, at which point Calderon allegedly told him that religious services could not ameliorate plaintiff's "problem." *Id.* Plaintiff asked what Calderon meant, and the latter proceeded to make unspecified jokes about plaintiff's: (1) medical issues (plaintiff does not describe the issues in his complaint); (2) accent; and (3) skin color. *Id.* Calderon then allegedly referred to plaintiff using a racial epithet. *Id.* Having concluded the foregoing exchange, both defendants Calderon and Baker formed a united front and informed plaintiff that he would not be allowed into the service. *Id.* Plaintiff contends that this exclusion was discriminatory and effected "for no other reason . . . than his faith as a Muslim." *Id.* at 4-5.

Plaintiff alleges that, in the wake of this incident, he has been singled out for harassment by Calderon and other officers. *Id.* at 5. This harassment led, at one point, to Baker inciting other inmates to forcibly remove plaintiff from the C-Facility yard after plaintiff threatened to sue Baker. *Id.* at 5-6. Specifically, plaintiff alleges that, on January 12, 2016, he was attacked and beaten by three other inmates while on the yard. *Id.* at 6. His attackers later told plaintiff that they were acting on behalf of Baker, who had told them to get plaintiff off the yard. *Id.*

The court screened plaintiff's complaint on March 21, 2017. ECF No. 8. It determined that, for screening purposes, the complaint stated: (1) a cognizable First Amendment religious exercise claim against Calderon and Baker and; (2) a First Amendment retaliation claim against Baker. *Id.* at 2.

/////

/////

Legal Standards

I.    Summary Judgment

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National*

3

*Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

4

for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

II. <u>Free Exercise of Religion</u>

To state a successful claim for violation of the Free Exercise Clause, a claimant "must allege facts plausibly showing that the government denied [him] a reasonable opportunity to pursue [his] faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972)) (internal quotation marks omitted). Additionally, to invoke the protection of the free exercise clause, a religious claim must be "sincerely held" and "rooted in religious belief." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994).

Then, "[t]he free exercise inquiry asks whether [the] government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1987).

5

A burden is substantial if it imposes "a significantly great restriction or onus upon such exercise."[1] *Int'l Church of the Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011) (quoting *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004) (internal quotation marks omitted). "That is, a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Id.* (quoting *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). "A substantial burden exists where the governmental authority puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citation and internal quotation marks omitted).

### III. Retaliation

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) adverse action by a state actor against an inmate (2) because of (3) the inmate's protected conduct that (4) chilled the inmate's exercise of his First Amendment rights, and (5) did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Under the fourth prong, the plaintiff need not demonstrate that his speech was "actually inhibited or suppressed"; he may only show that the adverse action would chill or silence a person of ordinary firmness from future protected conduct. *Id.* at 568-69.

## Analysis

### I. Free Exercise Claims

Defendants raise three arguments with respect to plaintiff's free exercise claim. First, they argue that they did not substantially burden plaintiff's religious belief. Second, they contend that,

---

[1] The court notes that this case discussed "substantial burden" in the context of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Nevertheless, courts have consistently held that the substantial burden analysis is similar under either a free exercise or RLUIPA inquiry. *See, e.g., Guru Nanak Sikh Soc. of Yuba City v. County of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) ("The Supreme Court's free exercise jurisprudence is instructive in defining a substantial burden under RLUIPA."); *see also See Int'l Church of Foursquare Gospel*, 673 F.3d at 1067 ("Generally, the term 'substantial burden' in RLUIPA is construed in light of federal Supreme Court and appellate jurisprudence involving the Free Exercise Clause of the First Amendment prior to the Court's decision in *Emp't Div. Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 878-82, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990).").

6

even if they did substantially burden plaintiff's beliefs, the restriction was reasonably related to a valid penological goal. Finally, they argue that they are entitled to qualified immunity. As discussed below, defendants' denial of plaintiff's access to Islamic services on March 11, 2015, itself did not amount to a substantial burden. Thus, it declines to reach the remaining arguments with respect to this claim.

Courts have repeatedly held that short-term occurrences or isolated incidents do not amount to a substantial burden. *See, e.g.*, *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998) (short-term and sporadic intrusions upon a pre-trial detainee's prayers did not constitute a substantial interference with detainee's religious practice). Here, plaintiff alleges only that he was denied access to Islamic services on one day in March of 2015.[2] Other district courts in this circuit have considered similar claims and concluded that one-time denials of a religious service did not amount to a substantial burden. *See Hampton v. Ayers*, No. CV 07-8130-RSWL (MAN), 2011 U.S. Dist. LEXIS 69742, * 39 (C.D. Cal., June 2, 2011) ("A single instance of denial of a religious service is not sufficient to violate the free exercise clause."); *Gray v. Cox*, No. 2:15-cv-00069-LDG (GWF), 2017 U.S. Dist. LEXIS 33842, * 5 (D. Nev. March 8, 2017) (holding that inmate who had, in a single instance, been ordered to leave a religious service and perform work on a "Sabbath day" had not alleged a substantial burden). Simply put, "a substantial burden . . . place[s] *more than an inconvenience* on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013) (emphasis added). Plaintiff has failed to offer any allegations indicating that either defendant did more than inconvenience his religious exercise.

Although it is not pleaded in the complaint, plaintiff alleges in his opposition brief that he has been denied access to Islamic services on dates preceding the instance at issue in this case. ECF No. 47 at 8, 20, 26. He now alleges that "Islamic Taleem services and Jumu'ah services are

---

[2] Defendants have provided declarations indicating that the service in question was actually cancelled on March 11, 2015. ECF No. 38-4 ¶ 10; ECF No. 38-5 ¶ 4. For the purposes of this analysis, however, the court accepts the truth of plaintiff's allegations – that service occurred that day and he was denied entry thereto.

7

always[s] delay[ed] or not called . . ." *Id.* at 8. Specifically, he claims that "*staff* delay Islamic Taleem services until yard release, that proved (sic) staff denied us our time 1 and a half hours or one hours (sic) and this happen[s] every other week . . ." *Id.* at 26 (emphasis added).[3] But plaintiff's new allegation still does not allege that these specific defendants who are named in the complaint caused anything more than a delay of services on a single day; i.e. March of 2015, the date on which defendants assert that services were cancelled. The new allegation that "staff" delayed services on other dates is insufficient to carry plaintiff's burden of presenting specific facts which show *a genuine issue* for trial that these named defendants caused those other delays or otherwise imposed a substantial burden on plaintiff's exercise of his religion. It is important to note that plaintiff will bear the burden of proof at trial on whether these defendants caused delays on more than a single day. At trial plaintiff would have the burden of showing that specific defendants engaged in specific acts which unduly burden the practice of his religion. Thus, he must produce in opposition to this motion evidence sufficient to support his factual claim and conclusory allegations are insufficient. *Taylor v. List*, 880 F.2d at 1045. *See Celotex*, 477 U.S. at 323-24. Further, that evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

Here, even with the new allegation that there were other instances on other dates where his attendance at services were delayed, plaintiff still presents no evidence upon which a fact finder could reasonably rely to conclude that these defendants are the persons who delayed or impeded plaintiff's attendance at services on the other dates. Broadly alleging that this is not an isolated incident because prison staff have previously denied him Islamic religious services, even if true, does not establish that either of the named defendants was responsible for those other denials.[4] And plaintiff provides no contextual allegations indicating when, how, or why these

---

[3] In the operative complaint plaintiff does state that Islamic religious services are "always[s] late." ECF No. 1 at 5. He does not affirmatively allege that this lateness has violated his First Amendment rights, however, nor does he undertake any effort to connect said lateness to any actions attributable to the defendants.

[4] The court recognizes that, at one point in his opposition, plaintiff does allege that "Defendant Calderon had denied plaintiff access to attend Islamic Taleem services before." ECF

8

other denials occurred. Thus, plaintiff's new allegation still fails to meet his burden on this motion. *See Anderson,* 477 U.S. at 247-48 ("By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original).

Plaintiff has attached documents to his opposition purporting to show that he has been denied access to services on other occasions. But they, too, suffer the same deficiency. None are sufficient to carry his burden of presenting specific facts sufficient to raise a genuine issue as to whether the defendants in this case were responsible for those other denials. The first of these documents is a prison grievance submitted in September 10, 2015 (referenced *infra* in footnote 5 with respect to the retaliation analysis). ECF No. 47 at 61. Therein, plaintiff claims that "we" – i.e. inmates seeking to participate in Islamic services – "are being delayed and denied our time for Islamic services . . . by our building and yard (c-yard) officers who sometimes do not release us at all." *Id.* The grievance does not mention Calderon, Baker, or any other officer by name. Plaintiff also points to his deposition, wherein he did state that Calderon had denied him access to religious services before. *Id.* at 108 (pgs. 62-65 of deposition transcript). Plaintiff failed, however, to describe these other instances and, under questioning, could aver only that the other denials occurred sometime in 2014 or 2015. *Id.* (pgs. 64-65 of deposition transcript). And previously in his deposition, plaintiff had made clear that the only claims he sought to litigate in the immediate case were the March 11, 2015 denial of services and the retaliation claim against defendant Baker. *Id.* at 97-98 (pgs. 21-23 of deposition transcript).

The manner in which these new allegations were raised also weighs against plaintiff. The Ninth Circuit has held that a plaintiff is required to give defendants adequate notice of the claims against them and, on that basis, has upheld a district court's decision to ignore allegations added

/////

---

No. 47 at 20. He does not describe how or when. Plaintiff goes on to reiterate that services are often delayed or cancelled, but he again lays the blame for these issues with "staff" rather than any named defendant. *Id.*

9

for the first time in a response to a motion for summary judgment. In *Pickern v. Pier 1 Imports (U.S.), Inc.*, the Ninth Circuit noted:

> In response to the motion for summary judgment, Pickern raised issues of ADA violations that went beyond a failure to provide a ramp. Pickern attempts to justify these new factual allegations as falling within the original complaint under Rule 8's liberal notice pleading standard. The district court did not err by holding that Pickern failed to provide the Appellees with adequate notice of these new allegations. Federal Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

457 F.3d 963, 968 (9th Cir. 2006). With respect to his free exercise claim, only the March 11, 2015 incident was put at issue by the operative complaint.

## II. Retaliation Claim

As a threshold matter, defendants argue that plaintiff failed to exhaust his retaliation claim against defendant Baker.[5] They contend that plaintiff admitted as much in his deposition and that a review of CDCR records has not uncovered any relevant grievances. The court agrees.

The Prison Litigation Reform Act of 1995 (hereafter "PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA applies to all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), but a prisoner is only required to exhaust those remedies which are "available." *See Booth v. Churner*, 532 U.S. 731, 736 (2001). "To be available, a remedy must be available as a practical matter; it must be

/////

---

[5] Defendants have filed a motion to strike an exhibit attached to plaintiff's opposition which is labelled as "Group 602 appeal of inmates staff denied the muslims to attend Islamic religious services in the month of March 2015" (ECF No. 47 at 32, 59-70). ECF No. 52. Defendants argue that this document is irrelevant insofar as it does not mention either defendant. *Id.* at 1-2. They also contend that it contains hearsay, is unauthenticated, and lacks foundation.

This document does not appear relevant to the question of whether either defendant violated plaintiff's rights. The appeal in question was submitted in September 2015 and provides no indication that the events at issue therein occurred in March 2015. ECF No. 47 at 61. Nevertheless, the court has, out an abundance of caution, considered it in the context of plaintiff's free exercise claim (*supra*) and declines to strike it.

capable of use; at hand." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (citing *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005)) (internal quotations omitted).

Here, review of the relevant portions of plaintiff's deposition transcript indicates that defendants are correct – he admitted under oath that he did not exhaust this claim by filing a 602 grievance form. ECF No. 38-8 at 25-26, ln. 81:24-82:1. And defendants have provided a declaration from C. Burnett – the relevant appeals coordinator – who states that a review of plaintiff's non-healthcare grievances does not indicate that plaintiff submitted any retaliation claim against defendant Baker which tracks the current allegations. ECF No. 38-7 at 3, ¶ 14. Thus, the court recommends this claim be dismissed for failure to exhaust.

### Request to Postpone Summary Judgment

The court recognizes that plaintiff has filed a request to postpone summary judgment. ECF No. 43. Therein he states that he has not yet received three discovery items which he requires to oppose the pending motion. *Id.* at 3-5. These three items are: (1) video footage of plaintiff being placed inside a cage after the January 12, 2016 attack and defendant Baker approaching him in order to examine his arm; (2) the "C-Facility chapel Islamic Taleem services schedule master sheet dated March 11, 2015" and; (3) video footage of the March 11, 2015 incident wherein he was denied access to Islamic services. *Id.* Defendants filed an opposition to this request, wherein they argue that the information cited by plaintiff was not requested in discovery and, moreover, has no probative value in opposing the motion for summary judgment. ECF No. 46. Plaintiff then filed a reply. ECF No. 50.

Defendants' arguments are persuasive and the court finds no justification for postponing summary judgment. With respect to defendant Baker, defendants have – as noted *supra* - moved for summary judgment on the basis that plaintiff did not administratively exhaust any retaliation claims against him before filing this suit. It is unclear how a video of plaintiff being placed in a cage after the inmate attack – which, again, plaintiff alleges was ordered by Baker in retaliation for his complaints about not being allowed into Islamic services – would establish administrative exhaustion. In his reply, plaintiff does vaguely allege that he feared Baker would retaliate against him if he filed a grievance and that this fear prevented him from exhausting his retaliation claim.

11

ECF No. 50 at 3. Plaintiff provides no evidence to support this assertion, however. He does not allege, for instance, that he attempted to exhaust and received specific threats from Baker (or any other officer). Nor does he otherwise allege that exhaustion was unavailable to him.

The other two pieces of evidence plaintiff stakes his request for postponement upon also have no oppositional value. These discovery items bear only on the question of whether plaintiff was wrongfully denied entrance to Islamic services on the day in question. As discussed above, the court assumes that the event on March 11, 2015 occurred as plaintiff alleges. The question pertinent to the motion, is whether such an isolated denial – assuming it occurred – is sufficient to stake a free exercise claim. As discussed *supra*, the court concludes that it is not.

## Conclusion

The court has read and considered plaintiff's opposition to the motion for summary judgment. Thus, it is ORDERED that:

1. Plaintiff's motion for extension of time to file a response (ECF No. 45) is DENIED as MOOT; and

2. Defendants' motion to strike (ECF No. 52) is DENIED.

Further, in light of the foregoing analysis, it is RECOMMENDED that defendants' motion for summary judgment (ECF No. 38) be GRANTED and the Clerk be directed to enter judgment accordingly and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 25, 2019.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE